# LESTER REAL ESTATE COMPANY, Appellant, v. CITY OF ST. LOUIS.

## Division One, June 18, 1902.

1. **Grading Street:** NO PAYMENT OF DAMAGES: UNREPEALED ORDINANCE: INJUNCTION. The Constitution of this State entitles the abutting property-owner along a proposed public improvement to have the damage to his property ascertained and paid before his property rights are disturbed; but where the uncontradicted evidence is that the city has abandoned the public improvement, or that it is impossible to undertake it because the ordinance which made it possible has been repealed, or because the proposed improvement was never intended to be made except upon the happening of a condition precedent, specified in the ordinance, the courts ought not to grant an injunction against the city to prohibit it from making the improvement. The fact that an ordinance which provides for the improvement remains unrepealed, does not itself constitute a threat or menace of injury, if the ordinance is impossible of enforcement because of a lack of any appropriation to do the work or because made dependent on another ordinance which has been repealed.

2. **Injunction:** ISSUANCE ON APPREHENSION. An injunction can not be issued to allay the fears and apprehension of the plaintiff. He must show that the acts against which he asks protection are not only threatened, but will in all probability be committed, to his injury.

Appeal from St. Louis City Circuit Court.—*Hon. Jno. A. Talty,* Judge.

AFFIRMED.

*Judson & Green* and *J. Clarence Taussig* for appellant.

(1) Under the terms of section 21, article 2, Constitution, one whose property is damaged for public use is entitled, at any time after the work has commenced, to have his com-

pensation adjusted and paid, without reference to the fact that the work is not completed. Hickman v. City of Kansas, 120 Mo. 110; St. Louis v. Hill, 116 Mo. 527; St. Louis v. Lang, 131 Mo. 412; Iron Co. v. St. Louis, 138 Mo. 608. (2) The plans for the bridge and approaches having been made by the board of public improvements, said plans are in effect a part of ordinance 18834, directing the board to cause a bridge to be built in accordance with plans adopted by said board of public improvements. Becker v. City of Washington, 94 Mo. 375; Asphalt Paving Co. v. Ullman, 137 Mo. 571. As the city of St. Louis can not construct the Clark avenue bridge and its approaches unless the same is done in pursuance of an ordinance; ordinance 18834, directing the construction of said bridge and approaches, being still in force, has the effect of a declaration that the bridge and approaches would be built, and the plans for said bridge and approaches made by the board of public improvements had the intended effect of establishing the grade on Eighteenth street, as in said plans declared. Iron Co. v. St. Louis, supra; St. Louis v. Lang, supra; Werth v. City of Springfield, 78 Mo. 107. (3) An injunction should be issued restraining the city of St. Louis from building the Clark avenue bridge and approaches, in pursuance of the city ordinance, until the damages suffered by plaintiff to its property, by reason thereof, is adjusted. Iron Co. v. St. Louis, supra; High on Injunctions, sec. 18; R. S. 1889, sec. 5510; R. S. 1899, sec. 3649; Overall v. Ruenzi, 67 Mo. 207; Cummings v. St. Louis, 90 Mo. 259; St. Louis v. Hill, supra; Armstrong v. City, 3 Mo. App. 15; McElroy v. Kansas City, 21 Fed. 257; McArthur v. Kelly, 5 Ohio St. 153.

*Chas. W. Bates* and *Wm. F. Woerner* for respondent.

(1) Before equity will grant injunctive relief, it must appear that the injury or wrong is real and imminent, if it

has not actually begun. Mere apprehension, fear, belief, prospect, possibility or contingency is not sufficient. Kerr on Injunctions (1 Ed.), star pp. 198, 339; Bispham on Equity (5 Ed.), sec. 440; 2 Beach on Injunction, sec. 1301; Brookline v. Mackintosh, 133 Mass. 215; Newark Aqueduct Board v. Passaic, 46 N. J. Eq. 552; Hutchinson v. Delano, 46 Kans. 345. (2) Unless the proof of alleged facts, upon which the right to injunctive relief depends, is sufficient to enable the court to affirmatively find them as facts, injunction should not issue. Carlin v. Wolff, 154 Mo. 545. (3). The authorities cited by appellant fully sustain the proposition that the city can only act in constructing the bridge in pursuance of the ordinance (No. 18834), and consequently only under its conditions and terms, including the plans adopted in accordance therewith. Charter of St. Louis, art. 6, secs. 27 and 28; art. 5, sec. 14; Iron Co. v. St. Louis, 138 Mo. 608; Werth v. Springfield, 78 Mo. 107; Asphalt Company v. Ullman, 137 Mo. 571; Becker v. Washington, 94 Mo. 375.

MARSHALL, J.—This is a proceeding for an injunction to restrain the defendant from constructing a bridge on Clark avenue, from Eighteenth to Twentieth streets, with approaches extending northwardly on Eighteenth and Twentieth streets.

The ordinance (No. 18834) authorizing the construction of the bridge, provides that it shall be fifty-four feet wide and shall be according to the plans therefor adopted by the board of public improvements. The ordinance appropriates one thousand dollars towards the cost of the work, and recites that when the Union Depot Company and the Terminal Railroad Association, pay to the city the $150,000 they agreed to pay it as a consideration for ordinance 15989, which authorized those companies to erect the present Union Station and vacate the streets and alleys covered by it, then the

auditor should pass that sum to the credit of the fund set apart for the construction of the Clark avenue bridge. The plaintiff owns a lot of ground, fronting two hundred feet, on the east side of Eighteenth street. The approach to the bridge on Eighteenth, according to the plans aforesaid, would start opposite the north end of plaintiff's lot, and rise on a grade of four feet to the hundred, so that opposite the south end of plaintiff's lot the grade of the bridge approach would be about eight feet above the present grade of the street, and about the same above the grade of plaintiff's lot. Eighteenth street is a sixty-foot street, and if the said approach is so constructed at that point, fifty-four feet wide, as the plans call for, it would leave only six feet of the street next in front of the plaintiff's land on the present grade. There is a double line of street car tracks on Eighteenth street. The plans themselves, however, call for Eighteenth street to be one hundred feet wide, and the defendant shows that by ordinance No. 17799, approved February 9, 1895, Eighteenth street was to be widened to one hundred feet, and that a suit to have it so widened was prosecuted in the courts, until that ordinance was repealed by ordinance No. 19786, approved April 6, 1899. If this had been done the street in front of the plaintiff's lot would have been forty-six feet wide, exclusive of the fifty-four feet occupied by the bridge approach, and the grade of the forty-six feet of the street would have been the same as the grade of the plaintiff's lot. Of course, as the street was to have been widened entirely on the east side of Eighteenth street, the forty feet additional necessary to widen that street would have to be taken from the plaintiff's lot. The plaintiff alleges that the "defendant has commenced work under said ordinance *in the construction of said approach*" and unless enjoined will proceed with said work on Eighteenth street in front of the plaintiff's property, and asks for an injunction to restrain the city from proceeding

with said work until the damage to the plaintiff's property is ascertained and paid.

The defendant, on the other hand, shows that for the present, at least, it has abandoned its purpose to construct the bridge in question, and that subsequent events have rendered the ordinance authorizing the construction of the bridge impossible of execution, and that before the city can construct such a bridge or any bridge or change the grade of Eighteenth street in front of the plaintiff's property, further legislation will be necessary. The defendant further shows that there is no room for even apprehension on the part of the plaintiff that such approach or bridge will be built under said ordinance, or that plaintiff's property can be damaged in any way by the fact that such ordinance remains unrepealed, or by reason of anything that can now be done pursuant to the authority of said ordinance.

In this connection a few dates grouped together become very important.

The ordinance vacating the streets and alleys for the erection of the Union Station was approved April 25, 1891. The ordinance providing for the widening of Eighteenth street was approved February 6, 1895. The ordinance for the construction of the bridge on Clark avenue, with the approaches on Eighteenth and Twentieth streets, was approved March 11, 1897. The ordinance repealing the ordinance providing for the widening of Eighteenth street was approved April 6, 1899. The only work that was ever done under the ordinance authorizing the construction of the bridge, was to start to put in the foundations for one pier on Clark avenue just outside of the Union Station grounds, which work amounted to $120.30, and the Union Station Company made it impossible for the city to proceed with the work by refusing to let the city come onto Clark avenue between Eighteenth and Twentieth streets, where their tracks and a part

of their station had been constructed, notwithstanding the ordinance which allowed that company to so use that part of Clark avenue, expressly reserved the right to the city to build such a bridge on Clark avenue at that point, and obligated the Union Station company to contribute $150,000 towards such construction. This small amount of work and this stopping of the work was done prior to April 28, 1898. This suit was begun May 20, 1899.

Upon this showing, the circuit court refused to issue the injunction and dismissed the bill, and the plaintiff appealed.

I.

This case compresses itself into a small compass. The ordinance authorizing the building of the Union Station and providing for a bridge on Clark avenue from ,Eighteenth to Twentieth streets was approved April 25, 1891. The ordinance for the widening of Eighteenth street was approved February 6, 1895. The ordinance authorizing the building of this bridge and its approaches was approved March 11, 1897. The only work that was ever done under that ordinance was to begin to put in a pier on Clark avenue, which was some distance south of the south end of the plaintiff's lot, and that work was begun, done and stopped prior to April 28, 1898, and was never resumed. No work has ever been done, threatened or commenced on the approach opposite the plaintiff's lot, as the petition charges. The ordinance for the widening of Eighteenth street was repealed April 6, 1899.

This suit was begun May 20, 1899. The repeal of the ordinances widening Eighteenth street, made it impossible, according to the undisputed testimony in the case, for the city to build this bridge or such approaches according to the terms of that ordinance. The one thousand dollars appropriated by the ordinance authorizing the construction of the bridge, was only sufficient to pay for the construction of the

one pier of the bridge on Clark avenue that was commenced. The ordinance clearly contemplated that no more work should be done and no more money expended or liability incurred until the city received the $150,000 from the Union Station company. In fact under section 28 of article 6 of the city charter, only work to the amount of the one thousand dollars appropriated by that ordinance, could be legally contracted for or done, for that provision of the charter requires a specific appropriation to be made by every ordinance authorizing public work to be done. And section 12 of article 5 · of the charter further provides that all ordinances that contemplate the payment of any money, shall, upon their second reading be referred to the appropriate committee, who shall obtain the indorsement of the comptroller thereon to the effect that sufficient unappropriated means stand to the credit of the fund therein named to meet the requirements of the ordinance, and it is made unlawful to pass any such ordinance without such indorsement of the comptroller.

It is manifest, therefore, that the city could not expend more than one thousand dollars under the ordinance authorizing the construction of the bridge, for that is all that has so far been appropriated. The $150,000 to be recovered from the railroad company is directed to be passed by the auditor to the credit of the fund for the construction of the Clark avenue bridge, but is not appropriated by this ordinance for the payment of this work. The one thousand dollars so far appropriated is only sufficient to build the one pier on Clark avenue. The failure of the city to widen Eighteenth street to one hundred feet, made the construction of the proposed bridge an impossibility. The fact, then, is that the city is not threatening and never has threatened to commence any work on the bridge approach nor to do anything that could possibly injure or damage the plaintiff's property, and the failure so far to collect the $150,000 from the Union Station company has

made it impossible for the city to carry out its original purpose expressed by the ordinance authorizing the bridge to be built. The fact that that ordinance stands unrepealed is not a menace or threat of injury to the plaintiff's property, for that ordinance, in its present shape, does not confer sufficient power upon any one to enable him to inflict the injury alleged, or any injury, upon the plaintiff's property. Especially is this true in view of the repeal of the ordinance providing for the widening of Eighteenth street, and of the fact, patent upon the face of the bridge ordinance, that the authority conferred by it for the building of the bridge, was to be suspended until the $150,000 was collected, and that until then only one thousand dollars worth of work was to be done, which the evidence shows would not affect the plaintiff's property in any manner whatever.

Hence, neither in fact nor in theory has the plaintiff's property been damaged by anything that has been done or can be done under any ordinance now in existence, and without the authority of an ordinance nothing can be done. No real or imminent danger or damage is shown, and there is not even a reasonable apprehension, prospect, possibility or contingency of any such shown to exist.

In 16 Am. and Eng. Enc. Law (2 Ed.), p. 361, the rule is thus stated: "The court can not grant an injunction to allay the fears and apprehensions of individuals. They must show the court that the acts against which they ask protection are not only threatened, but will in all probability be committed, to their injury. An injunction should not be issued to prevent the doing of an act unless the petitioner shows reasonable grounds for apprehending that it will otherwise be done. If, however, it is shown that the defendants threaten to do the wrong, and that they have the power, the court will issue the writ."

The same rule is substantially laid down in Bispham's

Principles of Equity (3 Ed.), page 492, where it is said: "A mere threat, or an act which may upon some contingency or at some remote time prove a nuisance, will not warrant the interference of the court. And the injury must not be contingent merely; and apprehension on the part of the complainant of a possible or speculative harm will not be enough." [See, also, 1 Beach on Injunctions, sec. 17 and 1301; 1 High on Inj. (3 Ed.), sec. 886.]

2 Story, Eq. Jur. (13 Ed.), sec. 924a, p. 226, says: "But in all cases of this sort, courts of equity will grant an injunction only in cases where the fact is clearly made out upon determinate and satisfactory evidence. For if the evidence be conflicting, and the injury to the public doubtful, that alone will constitute a ground for withholding this extraordinary interposition. And, indeed, the same doctrine is equally applicable to cases of private nuisance."

Under the Constitution of this State, the plaintiff is entitled to have the damage to his property ascertained and paid before his property rights are disturbed, but this plaintiff has failed to make out a case that brings it within the protection of a court of equity. The action is clearly premature. No damage is now threatened or imminent, or within the power of any city officer to be done. The uncontradicted evidence is that the city has abandoned, for the present at least, the purpose to construct the bridge approaches in front of the plaintiff's property, or more accurately speaking, that the said purpose was never intended by the ordinance in question to be carried out except upon the happening of the condition precedent specified in the ordinance and hereinbefore pointed out.

For these reasons the judgment of the circuit court is affirmed. All concur.