S. T. CLUTTER ET AL. v. L. H. BLANKENSHIP ET AL., Appellants.—144 S. W. (2d) 119.

Division One, October 31, 1940.

*Tom Moore, P. H. Graves* and *James E. Sater* for appellants.

*Gardner & Gardner* for respondents.

HAYS, P. J.—Plaintiffs, owners of residential property situated near the intersection of Third and Dunn Streets in Monett, Missouri, seek to perpetually enjoin the operation by defendants of a funeral home in a building located at said intersection. From a decree granting such permanent injunction defendants appealed.

Respondents at the outset question our jurisdiction. Appellants, in their answer below, set up as a defense that the granting of an injunction would deprive them of their property in violation of the due process clause of the Constitution. [Sec. 30, Art. II, Constitution of Missouri.] This defense they kept alive throughout the trial, in the motion for new trial and in their brief filed here. We think that a substantial constitutional issue has been raised in good faith; hence we have jurisdiction.

The evidence in this case is to the effect that the plaintiffs all reside within a block of the intersection mentioned. Shortly before this suit was begun defendants bought a brick residence at the northwest corner of Third and Dunn Streets. They purchased it with the avowed purpose of converting it into a funeral home and carrying on therein their business as undertakers. Defendant L. H. Blankenship is a licensed embalmer and the other defendant is his wife and is associated with him in business. Soon after acquiring the property in question the defendants placed on the corner of the house a large illuminated clock advertising the "Blankenship Funeral Home." Both defendants admitted that they planned to use the property in question in the undertaking business. A portion of the house was to be made into a workroom in which they would embalm the remains of deceased persons. In another portion of the house they intended to establish a chapel in which dead bodies they had embalmed would remain pending the date of the funeral, and in which funerals would at times be held.

Shortly after the filing of the suit the circuit judge issued a temporary restraining order; and, because of this, the defendants did not actually operate their establishment before the trial, although they did remove to the house the body of an aunt of Mrs. Blankenship and there prepared the same for burial. During this period they also

964

stored some caskets in the basement and occasionally stopped their funeral car in front of the house to load it with flowers.

▮ The weight of evidence supports the contention of the plaintiffs that the neighborhood here involved is a residential one. It is located three blocks from the principal business district of the city and from the nearest store. Two blocks from the Blankenship house there is another funeral home which has been conducted in that locality for many years. It is operated by one Callaway. Across the street from the Callaway establishment there is a gasoline filling station. These are the nearest business establishments. It is true that one or two of the property owners in the immediate neighborhood rent rooms or apartments in their homes for residential purposes, and one neighbor seems to have a small private boarding house in which she serves meals to a few persons. There is evidence that several churches are located in the neighborhood, but this has no tendency to destroy its residential character. If the facts above outlined are compared to those which were before us in Tureman v. Ketterlin, 304 Mo. 221, 263 S. W. 202, 43 A. L. R. 1155, it will be seen that the neighborhood must be classified as "residential."

As stated above, appellants contend that a perpetual injunction restraining the use of their residence as a funeral home deprives them of property without due process of law. It is true that one of the essential elements of property ownership is the owner's privilege to use his property as he sees fit; but this privilege is not a universal and unlimited one. It is limited by the doctrine expressed in the maxim *sic utere tuo ut alienum non laedas*. The law from the earliest times has recognized that there are certain uses to which property may be put which so seriously interfere with the use and enjoyment by others of their property or with the rights of the public that they must be forbidden. When such a use of property is enjoined by equity, the property owner is not deprived of his property at all since the privilege of using it to commit a nuisance was never his. One might as well say that the law of murder, in forbidding the use of a weapon to feloniously kill another, deprives the owner of his property therein.

▮ Furthermore, it is not every deprivation by the state of "life, liberty or property" which the Constitution forbids, but only such deprivation as is without due process of law. An action by a state through its Legislature, its executive or its judiciary in the proper exercise of the police power, even though it may interfere with the liberty or property of an individual, constitutes due process. True, such interference must not be arbitrary, unreasonable or a despotic spoliation of vested rights, and it must reasonably tend to protect and promote the public morals, peace, health, safety and general welfare; but if an exercise of police power meets these tests, it will not be held to violate the requirements of the due process clause even though it does interfere with the property rights of a citizen.

[Chicago, Burlington & Quincy Railway Co. v. Illinois,. 200 U. S. 561, 26 Sup. Ct. 341, 50 L. Ed. 596; Bacon v. Walker, 204 U. S. 311, 27 Sup. Ct. 289, 51 L. Ed. 499; New Orleans Gas-Light Co. v. Louisiana, etc., Co., 115 U. S. 650, 6 Sup. Ct. 252, 29 L. Ed. 516; Slaughter-House Cases, 16 Wall. 36, 21 L. Ed. 394.] ▉ The police power extends to the definition by the Legislature of acts constituting a nuisance; and the General Assembly, if it act reasonably, may declare that to be a nuisance which was not such at common law. [Mugler v. Kansas, 123 U. S. 623, 8 Sup. Ct. 273, 31 L. Ed. 205; Crutcher v. Kentucky, 141 U. S. 47, 11 Sup. Ct. 851, 35 L. Ed. 649.] If the Legislature be vested .with the power to declare that certain uses of property are a nuisance, then certainly the courts have a similar power to enjoin acts which from their very nature would come within the classification of common law nuisances. The question therefore of whether this injunction will unconstitutionally deprive appellants of their property without due process of law depends upon whether or not the contemplated use of this property would be a nuisance. If under the circumstances of this case a funeral home located in this particular neighborhood would constitute a nuisance, an injunction restraining such use would not offend against the due process clause.

▉ The profession of an undertaker or funeral director is a lawful one. Undertaking establishments are not only legitimate business enterprises but are highly necessary to the well-being of the community. [Tureman v. Ketterlin, supra; Higgins v. Bloch (Ala.), 104 So. 429.] We have, however, held in two decisions which have exhaustively considered the authorities that a funeral home located in a purely residential neighborhood does constitute a nuisance. [Tureman v. Ketterlin, supra; Streett v. Marshall, 316 Mo. 698, 291 S. W. 494.] In these cases, as in the case at bar, the evidence showed that there was little or no danger to be apprehended of the spread of contagious diseases due to the presence in a funeral home of the bodies of those who had died of such maladies. In those cases, as in this, there was no evidence to show that the funeral homes there sought to be set up would be improperly managed, but we held the constant reminder of death and the consciousness that the remains of deceased persons would be present in the establishments would tend "to destroy the comfort, the well-being, and the property rights of the owners of homes" in the neighborhood.

Appellants contend that these decisions "are out of line with the weight of authority in other states." It is true that there are cases which support this contention. [Westcott v. Middleton, 43 N. J. Eq. 478, 11 Atl. 490 (affirmed without opinion, 44 N. J. Eq. 297, 18 Atl. 80); Dean v. Powell Undertaking Co. (Cal. App.), 203 Pac. 1015; Rea v. Tacoma Mausoleum Association (Wash.), 174 Pac. 961, 1 A. L. R. 541 (which in effect overruled Densmore v. Evergreen Camp (Wash.), 112 Pac. 255; 31 L. R. A. (N. S.) 608, Ann. Cas. 1912B,

1206) ; Pearson & Son v. Bonnie (Ky.), 272 S. W. 375, 43 A. L. R. 1166.] But a majority of adjudications by other courts are in accord with the Missouri cases above cited and the trend of the later decisions is in that direction. [White v. Luquire Funeral Home (Ala.), 129 So. 84; Fentress v. Sicard (Ark.), 25 S. W. (2d) 18; Harris v. Sutton (Ga.), 148 S. E. 403; Haan v. Heath (Wash.), 296 Pac. 816 (in effect overruling the Rea case, supra) ; Beisel v. Crosby (Neb.), 178 N. W. 272; Albright v. Crim (App. Ct. of Ind.), 185 N. E. 304; Weinmann v. Miles (Kan.), 4 Pac. (2d) 437; Dillon v. Moran (Mich.), 211 N. W. 67; Arthur v. Virkler, 258 N. Y. Supp. 886; King v. Guerra (Tex. Civ. App.), 1 S. W. (2d) 373; Bragg v. Ives (Special Ct. of App. of Va.), 140 S. E. 656.]

Appellants further contend that the injunction in this case was improperly issued because at the time of filing the suit the funeral home had not been actually established and that any danger which might ensue from its establishment had not yet occurred. In support of this contention appellants cite Lester Real Estate Co. v. St. Louis, 169 Mo. 227, 69 S. W. 300; Normandy Consolidated School District v. Harral, 315 Mo. 602, 286 S. W. 86; Holke v. Herman, 87 Mo. App. 125; Symmonds v. Novelty Cemetery Association (Mo. App.), 21 S. W. (2d) 889; Aufderheide v. Polar Wave Ice & Fuel Co., 319 Mo. 337, 4 S. W. (2d) 776. With the rules announced in these authorities we have no concern. They simply hold that an injunction will not issue where the plaintiff feels that he may be damaged by an act which the defendant has not yet committed and may never commit. Specifically in connection with nuisances it has been said that an injunction will not be granted where the contemplated act of the defendant may or may not constitute a nuisance depending on the manner in which it is done. On the other hand where the establishment of a particular business in a particular neighborhood will, no matter how carefully it is run, constitute a nuisance and where the intention of the defendants to establish the business is proved beyond all reasonable doubt and the preliminary acts looking towards its establishment have actually been performed, as here, equity may interfere by injunction. [20 R. C. L. 478.] Any other rule would lead to serious injustice, for it would require the plaintiffs to actually suffer damage before applying for relief and would mean that the defendants would be led to expend considerable amounts of money in the establishment of their business before its unlawful character had been judicially determined.

The trial court therefore properly enjoined the establishment of this funeral home. It follows that the decree below must be affirmed. It is so ordered. All concur.