Ex Parte EDWARD M. CAVANAUGH, Petitioner, v. JOHN A. GERK, Chief of Police of City of St. Louis.

In Banc, March 15, 1926.

1. **CITY: Delegation of Legislative Power: Street Traffic.** A legislative body cannot delegate its authority, but alone can exercise its legislative functions. The Board of Aldermen of the City of St. Louis cannot delegate to a traffic council power to promulgate rules and regulations for the use of the public streets by automobiles and determine to what character of streets and crossings and to what territory said rules shall apply.

2. ————: ————: ————: **Definition and Character of Traffic: Emergency.** The Board of Aldermen of the City of St. Louis may by ordinance designate the territory in which regulations relating to automobile traffic on its public streets may be applied, and enforce the regulations by some general description as to population, or business occupations, or amount of traffic or width of streets, or travel congestion, and having declared what regulations must be observed and to what territory and to what character of streets and crossings they are to apply, may leave to a traffic council created by ordinance to ascertain what particular territory comes within the general designation and to ascertain to what particular streets and crossings the regulations apply and to set up at such crossings the particular stop-signals designated in the regulatory ordinance, and designate the particular street which by the ordinance is limited to one-way travel; but the aldermen cannot delegate to a traffic council power to prescribe the regulations and to designate the territory in which, and to define the character of streets and crossings to which, certain rules and regulations to be promulgated by the traffic council are to apply and be observed. Nor does the fact that the ordinance declares that such

Ex parte Cavanaugh.

rules and regulations promulgated by the traffic council shall be in force for ninety days, and if not approved by the board of aldermen within that time shall be void, save the ordinance from illegality.

Constitutional Law, 12 C. J., Section 323, p. 839, n. 71; Section 364, p. 864, n. 83. Motor Vehicles, 28 Cyc., p. 36, n. 10.

## *Habeas Corpus.*

PETITIONER DISCHARGED.

*Gustav Vahlkamp* for petitioner.

(1) Municipalities are given power by the State to establish one-way streets and make other traffic regulations to meet their needs and requirements by ordinance only. Laws 1921 (Ex. Sess.) p. 100. (2) Ministerial powers may be delegated by a city, but legislative powers cannot. St. Louis v. Russell, 116 Mo. 248; St. Louis v. Allen, 275 Mo. 501; Matthews v. City of Alexandria, 68 Mo. 115, 30 Am. Rep. 776. A law that vests the power in an official to make regulations, in his discretion, governing the use of city streets, is an unconstitutional delegation of the legislative powers. Merchants Exchange v. Knott, 212 Mo. 616. (3) The legislative power of the city of St. Louis is vested in the Board of Aldermen, and where the charter gives the power to a board of aldermen that power cannot be delegated to another person or body. Charter of St. Louis, Art. 4, sec. 1; Thomas v. Boonville, 61 Mo. 282.

*Julius T. Muench* and *Charles J. Dolan* for respondent; *Arthur H. Bader* of counsel.

(1) The city has the power under the provisions of its charter (a) to regulate the use of its streets and sidewalks, (b) to do all things whatsoever expedient for promoting or maintaining the comfort, peace, education,

morals, government, health, welfare, trade, commerce or manufactures of the city or its inhabitants. Charter of St. Louis (a) Art. 1, sec. 1, cl. 14 and (b) Art. 1, sec. 1, cl. 33; Sluder v. Transit Co., 189 Mo. 107; St. Louis v. Kellman, 243 S. W. 134; Haeussler Inv. Co. v. Bates, 267 S. W. 635. (2)   Ordinances No. 32846 and 32926, known as the "Traffic Ordinance" and Section 6 thereof as amended by Ordinance 33446, creating the "Traffic Council" and vesting it with power and authority to promulgate rules and regulations governing the use of the streets of the city are ordinances enacted by virtue of the police power vested in the municipality, and are police regulations, merely prescribing who shall exercise such police power. They do not delegate legislative powers. Haller v. St. Louis, 176 Mo. 606; St. Louis v. Kellmann, 243 S. W. 134; Phelan v. Paving Co., 227 Mo. 666; 12 C. J. 840; Veneman v. Jones, 118 Ind. 41; Commonwealth v. Robeson, 5 Cush. 438; Commonwealth v. Stoddard, 2 Cush. 562.   (3)   The Traffic Council so created and vested with the powers under the ordinance is an administrative body, the agent of the Board of Aldermen to ascertain and declare the zone within which the ordinance which expresses the legislative will shall take effect.   United States v. Casey, 247 Fed. 362; United States v. Ormsbee, 74 Fed. 207; Field v. Clark, 143 U. S. 649; State v. Colbert, 201 S. W. 52; 12 C. J. 845 (notes); Milwaukee v. State Railroad Comm., 162 Wis. 127.

WHITE, J.—The petitioner alleges that he is unlawfully restrained of his liberty by the respondent in the city of St. Louis.   By agreement of the parties, service of the writ and the production of the body of the petitioner were waived.   The respondent filed his return setting up the reasons for holding the petitioner in custody.

There is no disagreement as to the facts in the case. The petitioner was arrested for driving his automobile in the city of St. Louis in disregard of an automatic-stop signal at Fourteenth and Locust streets, and for going in

the wrong direction on St. Charles Street, a one-way street.

Ordinance No. 32846, creating the traffic council of the city of St. Louis, has the following provisions:

"Section One. The President of the Board of Police Commissioners, the Director of Streets and Sewers and the Chairman of the Legislative Committee of the Board of Aldermen shall constitute a traffic council whose function it shall be to codify existing traffic ordinances, to harmonize the traffic ordinances of the city with the State law, to propose changes in the ordinances regulating traffic as the needs of the city may require, and to advise the Board of Aldermen regarding proposed changes."

Section Two provides for the organization and places of meeting of the traffic council. Section Three is as follows:

"Section Three. The recommendations of the traffic council shall be embodied in the form of bills, and shall be introduced in the Board of Aldermen by the Chairman of the Legislative Committee, to be considered in the same manner as any other bills. *No recommendation of the traffic council shall have any binding force until it shall have been passed in the regular way by the Board of Aldermen and approved by the Mayor.*"

Ordinance No. 23926 contains Section Six, defining the powers of the traffic council, which in part is as follows:

"Section Six. *Powers of Traffic Council.*

"(A) *Powers in General.*—The traffic council as created by ordinance number thirty-two thousand, eight hundred and forty-six, approved February twenty-eighth, nineteen hundred and twenty-four, shall have power by rules and regulations adopted by it to:

"(One) Designate the streets or parts of streets upon which there shall be no parking of vehicles or upon which there shall be parking for a limited time.

"(Two) Exclude or restrict parking on designated streets during certain hours.

"(Three) Permit angle parking in designated places.

"(Four) Establish one-way streets.

"(Five) Cause limit lines to be marked upon pavements and sidewalks for the direction of pedestrians and others.

"(Six) Prohibit left-hand turns by vehicles at street corners.

"(Seven) Establish and cause to be erected traffic signals and signs and parking and no-parking signs at such places as may be designated by it, and such signals and signs so established shall be recognized and the directions followed by all operators of vehicles."

Other regulations similar in character follow:

"(b)   The rules and regulations established by the traffic council, as hereinbefore provided, shall be published in the City Journal, *and upon their publication therein they shall become effective and shall govern the regulation of traffic for a period of ninety days after the date of publication,* within which time there shall be introduced in the Board of Aldermen a bill embodying such rules and regulations, and such rules and regulations *shall continue in full force and effect during such time as such bill shall be pending in the Board of Aldermen:* Provided, however, that if no bill embodying such rules and regulations shall have been introduced in the Board of Aldermen within the period of ninety days after the publication of such rules and regulations, as hereinbefore provided, or if any such bill shall fail of final passage in the Board of Aldermen, then such rules and regulations shall cease to be in force and effect."

The traffic council caused to be erected at the intersection of Fourteenth and Locust streets automatic traffic signals, which display at intervals the words "Go," "Wait," "No Left Turn" and "Stop." The signals were synchronized so as to regulate the traffic at that point. The traffic council also promulgated, September 15, 1925, this regulation: "St. Charles Street from Third Street to Fourteenth Street shall be a one-way street and for

west-bound traffic only.'' These regulations were published as required by ordinance.

On December 14, 1925, the petitioner operated his motor vehicle east on Locust Street, across Fourteenth Street, disregarding the stop-signal at that point. He continued east to Thirteenth Street, then turned north on Thirteenth Street to St. Charles Street, and after turning east on St. Charles Street he was charged with driving east instead of west. For these two offenses he was arrested.

No bill for an ordinance, provided for by Section Three of Ordinance No. 32846, and by clause (b) of Section Six in Ordinance No. 32926, was passed or introduced in the Board of Aldermen.

I. The petitioner asserts that the traffic council had no right to promulgate traffic rules, nor to determine the territory to which they should apply; that only the aldermen of the city of St. Louis have such authority, **Regulation of Use of Streets.** which they could not delegate to an administrative body like the traffic council. The question for consideration is whether the authority, which the Board of Aldermen attempted to vest in the council by Ordinance No. 32926, is a delegation of the legislative authority.

No doubt the city of St. Louis possesses legislative power, derived directly from the Constitution, as claimed by the respondent, citing Haeussler Inv. Co. v. Bates, 267 S. W. l. c. 637. As a police regulation, the city could provide for the safety and convenience of its inhabitants, by ordinance, define the parking places, establish automatic signals and one-way streets, and other regulations mentioned in Section 6 of Ordinance No. 32926.

II. A legislative body cannot delegate its authority but alone must exercise its legislative functions. [12 C. J. 839; 6 R. C. L. 175.] It may empower certain officers, boards and commissions to carry out in detail the

legislative purposes and promulgate rules by which to put in force legislative regulations. It may

**Delegation of Legislative Power.** provide a regulation in general terms and may define certain areas within which certain regulations may be imposed, and it may empower a board or a counsel to ascertain the facts as to whether an individual or property affected come within the general regulation or within the designated area. Much more than that was attempted here. [Merchants Exchange of St. Louis v. Knott, 212 Mo. 616; Hays v. Poplar Bluff, 263 Mo. 516.] The opinion in City of St. Louis v. Russell, 116 Mo. 248, considered the subject at length, and cited many early cases. That case concerned the location of a livery stable, the authorization of which was a legislative function. It was held that such authority could not be delegated to property owners in the block where it was proposed to locate a livery stable.

In the Knott case an act providing for the inspection of the weighing grain by the Board of Railroad and Warehouse Commissioners was under consideration. The Board, by the act, was authorized to establish certain points for the inspection and weighing of grain. It was held to be a plain attempt to delegate legislative authority to that board. The opinion says, l. c. 638:

"The act does not define, classify, or in any wise earmark the warehouses and elevators upon which or the territory or place in which it shall operate. If it had been certain in its intendment in these particulars, leaving to the Commissioners to find the fact as within the territory description, then another question might be here. Again, the act does not confine itself to elevators and warehouses of a certain given capacity, or devoted by their owners to a defined *quasi*-public commercial use. If it had been certain in its intendment in that particular and had left the Commissioners to ascertain and determine whether given elevators and warehouses came within a given statutory designation, then a different question would have been here."

The opinion then goes on to say that if the act had confined the designation to cities of a certain size or to territories and markets of a certain character, a different question would have arisen, but the legislative judgment and discretion, which should have been exercised in defining the business of the act, was attempted to be delegated to the administrative board.

The case of Hays v. Poplar Bluff was where certain fire limits were laid off and defined in the city, and the ordinance defining the limits left it discretionary with the mayor and city council to exclude certain property from the requirements imposed upon the property within the limits, and it was held a delegation of legislative authority. If the ordinance had specified certain character of buildings, or buildings used for certain purposes, which would not possess the fireproof requirements, and had left it to the officers to ascertain the character of the buildings that would or would not come within the description, then it would not have been a delegation of authority: the ordinance would have been legal.

Such cases apply directly here. If the Board of Aldermen of the City of St. Louis in their ordinance creating the traffic council had designated the territory in which it might operate, and enforce its regulations, by some general description as to population, or business occupation, or amount of traffic, and then had left it to the traffic council to ascertain the facts as to what particular territory should come within the general designation, the ordinance would have been constitutional and the regulations of the council within it legal. The traffic council was authorized to determine the territory in which they would put in operation regulations and to decide upon the regulations which they would put in force. The Board of Aldermen in passing the ordinance recognized the illegality of attempting to vest such authority in the traffic council, by providing that an ordinance should embody their recommendations, but evidently concluded as an emergency measure the recommendations would have

the force of law before any law was passed. The conflict between Section Three of Ordinance No. 32846 and clause (b) of Section Six of Ordinance No. 32926 shows the confusion in the aldermanic mind.

Respondent cites City of St. Louis v. Kellman, 243 S. W. 134. That case involved the validity of an ordinance requiring a certificate to be issued before one could engage in the business of milk dealer. It prescribed the standards of purity and quality of milk which only could be dealt in, and certain qualifications required of a milk dealer. The Board of Public Service was not authorized to promulgate any regulation regarding the quality of the milk or the character of the applicant entitled to a permit. They were only authorized to ascertain the facts which would bring a would-be dealer and his product within the requirements of the ordinance. The ordinance was held valid.

Other cases are cited by respondent, but each of them involves a statute or an ordinance which in general terms embraces the particular subject upon which, or the particular territory within which, the law is to operate, leaving it only to the administrative board or officer to ascertain the facts as to whether the subject of the regulation comes within the general terms.

Here there is no ordinance defining the territory in which certain rules might promulgate or defining the character of streets or crossings upon which certain regulations may be put in operation, leaving to the traffic council only to apply the general provisions by ascertaining the facts. The traffic rules, promulgated by the traffic council, which the petitioner is charged with violating, were unauthorized by any law. The petitioner is therefore discharged. All concur.